IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>BENJAMIN JONES, MICHELLE YU, OFFICE OF TAX COLLECTOR SAN MATEO COUNTY, NATIONAL CITY MORTGAGE COMPANY, UNIFUND CCR PARTNERS, EMPLOYMENT DEVELOPMENT DEPARTMENT STATE OF CALIFORNIA, FRANCHISE TAX BOARD STATE OF CALIFORNIA, and BANK OF AMERICA N.A.,<br><br>    Defendants.<br>                                            / | No. C 10-00796 WHA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Michelle Yu's marriage led to this: Her home — formerly joint property of the now-dissolved marriage — is now subject to foreclosure by the government to pay the tax liabilities of her ex-husband. The government is entitled to a foreclosure sale of the subject property. Accordingly, its motion for summary judgment is **GRANTED**.

**STATEMENT**

Defendants Benjamin Jones and Michelle Yu married in 1996. That same year they bought, as joint tenants, the property that is now the subject of this action (Dkt. No. 17-1 Exh. 1). Defendant Yu has lived in the subject property as her primary residence since its purchase.

Defendants Jones and Yu separated in 2002 but remained married until 2010. As part of the judgment of dissolution, defendant Yu was awarded the subject property (*id.* at Exh. 6).

On December 20, 2002, defendants Jones and Yu executed a deed of trust on the subject property as joint tenants, in exchange for a $277,000 loan (*id.* at Exh. 4). On August 11, 2003, the IRS assessed an additional tax of $81,311 against defendant Jones for the 2000 tax year, along with penalties and other additions (*id.* at Exh. 3 at 1). On September 7, 2004, the IRS filed a Notice of Federal Tax Lien on the subject property against defendants Jones and Yu (*id.* at Exh. 5).

Defendant Yu states the following via declaration:

> In late 2002 we decided to refinance the condo, because there was an upcoming "balloon" payment due. In the course of doing so I became aware (to my great distress) of huge credit card debts that Jones had accumulated, much of it dating from the time before we were married, and which he had never told me about. The lender required that these be paid off. We took out a loan in the amount of $263,412.08. Most of this was used to pay off the balance of the first mortgage, and the rest was used to pay off Jones's huge credit card debt. That loan closed and the payment received in about mid-December 2002. . . .
>
> The week we signed the closing papers for the loan, I learned that Jones had rented an apartment in San Francisco and was intending to move out. Almost immediately after Jones had used the loan proceeds to pay off his credit cards, he announced that the marriage was over and he moved out. This was in mid-December, 2002. It is clear that he had planned this for a while but was waiting until he could get his hands on the money. When Jones moved out he told me specifically that he had no interest in the Condo and no intention of paying any of the debt on it, despite the fact that the new debt had been incurred to pay his personal debts. He told me the house was mine. In "exchange" he told me that he was keeping an expensive boat that he had bought some time before. He had always treated the boat as his even though I had co-signed the loan with which we bought it. We did not put this agreement in writing.

Defendant Yu concedes that this did not affect a transfer of the property to her as the exclusive owner because the agreement was not in writing (Opp. 9). Defendant Yu's declaration also states that she put $54,000 of her own money into buying the condo, that she had to pay certain of Jones's debts after he left, and that she has made payments on the condo by herself since that time. Jones moved to Canada in 2003 or 2004.

In this suit, the government seeks to collect on defendant Jones's outstanding tax liability by foreclosing on the federal tax lien on the subject property. It seeks judgment determining the parties' interests in the subject property and compelling sale of the property to

2

satisfy those interests. Defendant Yu claims that the government has no right to foreclose. Defendant Jones, on the other hand, has stipulated with the government that judgment should be entered in favor of the government and against him "for his delinquent federal income tax liabilities for the year 2000, plus related penalties and interest, in the amount of $168,149.71 as of February 24, 2010, plus interest" (Dkt. No. 6). The actual federal tax lien is in the amount of $109,333.22 (Dkt. No. 17-1 Exh. 5).

In addition to Mr. Jones and Ms. Yu, six other entities were named as defendants because they may have claimed an interest in the property. The involvement of these six entities must be set out more specifically.

### OFFICE OF THE TAX COLLECTOR OF SAN MATEO COUNTY

This defendant has disclaimed any interest in the property (Dkt. No. 14) ("[The County] does hereby disclaim any right, title, or interest in or to the property described in the Complaint that the County may or may not possess by virtue of any recorded liens.").

### NATIONAL CITY MORTGAGE COMPANY N/K/A PNC MORTGAGE

This defendant, which is now known as PNC Mortgage, in its answer to the complaint, stated that defendant Jones is indebted to PNC Mortgage pursuant to a promissory note in the original amount of $277,000, secured by the deed of trust executed on December 20, 2002. It further stated that the deed of trust was recorded in the San Francisco County Recorder's Office on January 15, 2003, as instrument number 2003-H336157-00, and that PNC is entitled to recover $165,736.35 from the proceeds of any foreclosure sale of the property (Dkt. No. 15). A copy of the deed of trust was not attached to the answer but was made a part of the record when appended to the government's opening brief in support of the instant motion.

PNC Mortgage and the government have stipulated to the priority of their two interests. PNC does not oppose judicial foreclosure of the subject property by the government, but the federal tax lien is subordinate to PNC's deed of trust encumbering the property. The stipulation provides that the proceeds from a foreclosure sale will be used to pay the claim of PNC Mortgage to the subject property before they are used to satisfy the government's claim (Dkt. No. 50). The sole information in the record as to the *current amount* of PNC Mortgage's

interest in the property is: (1) PNC Mortgage's statement in its answer that the amount is $165,736.35; and (2) defendant Yu's sworn statement in her declaration submitted in opposition to the instant motion that "[t]here is currently (as of September 12, 2010) principal owning on the current mortgage in the amount of $161,208.24." No party has submitted documentation to substantiate the amount currently owing.

**UNIFUND CCR PARTNERS**

This defendant filed an answer to the complaint, in which it states that on April 3, 2006, a complaint was filed in the matter of *Unifund CCR Partners, a New York General Partnership v. Benjamin A. Jones*; that defendant failed to file a response to the complaint and on September 18, 2006, judgment was entered against him in the amount of $19,302.28; and that an abstract of judgment was recorded in San Francisco County as document number 2006-I295946-00, on December 11, 2006. Accordingly, Unifund CCR Partners claims a lien against the subject property in that amount, plus interest (Dkt. No. 42). The answer does not indicate where that suit occurred or append a copy of the abstract of judgment. Nor is the abstract of judgment a part of the record otherwise.

Subsequently, Ms. Yu filed a crossclaim against Unifund CCR Partners, in which she stated that her claim to the property has priority over any claim by Unifund and that "Benjamin Jones, alone against whom Unifund purportedly secured judgment, has no present lienable interest in the [p]roperty" (Dkt. No. 47). Unifund thereafter answered the crossclaim by stating that Ms. Yu's claim does not have priority and denying that Benjamin Jones has no present lienable interest in the property (Dkt. No. 49).

**EMPLOYMENT DEVELOPMENT DEPARTMENT OF THE STATE OF CALIFORNIA**

This defendant has disclaimed any interest in the property (Dkt. No. 20) ("[the agency] disclaims any and all rights, title, or interest in or to the subject matter of the complaint").

**FRANCHISE TAX BOARD STATE OF CALIFORNIA**

This defendant has disclaimed any interest in the property (Dkt. No. 10) ("[The agency] does hereby disclaim any right, title, or interest in or to the property . . . that the FTB may or may not possess by virtue of any recorded liens").

4

**BANK OF AMERICA N.A.**

This defendant has not appeared in response to the complaint. Summons was served on July 23, 2010 (Dkt. No. 32). In its late-filed reply, the government states: "[Bank of America] has not filed a responsive pleading and government [sic] will proceed to default." No entry of default has been sought.

**OTHER PROCEDURAL HISTORY**

The case management order in this action set February 3, 2011, as the last day to file dispositive motions (Dkt. No. 11). Eager to prevail, however, the government filed the instant motion for summary judgment on July 7, 2010, and noticed a hearing on the motion for August 12. Nevertheless, three stipulations to continue the hearing have been approved, but those continuances have now lapsed. Defendant Yu opposed the motion on the merits on September 13.

No other defendant has filed an opposition or brief in response to the summary judgment motion. Defendants were given abundant advanced notice that the hearing would be on January 13, and that they should accordingly register any objections before then. They have known since *October 8, 2010*, that the hearing on this motion would be on January 13, 2011 (Dkt. No. 34). As a further precaution, a notice from the Court on January 4, 2011, *reiterated* that the motion would be heard on that date (Dkt. No. 52). Yet no defendant besides Ms. Yu has filed anything concerning the government's motion. The government filed an untimely reply in support of its motion. Only the government and counsel for defendant Yu appeared at the hearing on this motion.

Taken together, the briefs from the government and defendant Yu concerning the instant motion append the following:

- The grant deed of Benjamin Jones and Michelle Yu to the subject property
- The federal joint tax return of Benjamin Jones and Michelle Yu from the year 2000
- A certificate of assessments and payments for the individual income tax of Benjamin Jones in the year 2000
- The deed of trust in the subject property naming as borrower Benjamin Jones and Michelle Yu as joint tenants

5

- The notice of federal tax lien on the subject property
- The judgment of dissolution of marriage between Benjamin Jones and Michelle Yu by the San Francisco County Superior Court
- A declaration of Michelle Yu
- An appraisal of the subject property dated November 8, 2002
- A certificate of assessments and payments for the individual income tax of Benjamin Jones and Michelle Yu in the year 2002
- A certificate of assessments and payments for the individual income tax of Benjamin Jones and Michelle Yu in the year 2003
- A resume and declaration of a property appraisal and liquidation specialist for the IRS

Certain information about which defendant Yu requests judicial notice is discussed below. In its motion the government requests "summary judgment and a decree of sale in this matter."

**ANALYSIS**

The government is entitled to summary judgment to proceed with the foreclosure sale of the subject property. The sale will not be the end of this case, however, because further information is needed to determine each of the parties' rights to the proceeds.

**A.    STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). All reasonable inferences, however, must be drawn in the light most favorable to the non-moving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). That said, unsupported conjecture or conclusory statements cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

### B.  THE GOVERNMENT'S RIGHT TO FORECLOSURE SALE

The government has a right to have the subject property foreclosed upon regardless of defendant Yu's interest, subject to her recovery of her fair share of the sale proceeds. In an action to enforce a lien or to subject property to payment of tax:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. 7403(c). When the federal tax lien attached to the subject property, it belonged to defendants Jones and Yu as joint tenants. The lien was not extinguished or diminished by virtue of the fact that by dissolution of their marriage defendant Yu received sole ownership of the property. *See United States v. Rodgers*, 461 U.S. 677, 691 n.16 (1983). Our court of appeals has stated clearly:

> Once the lien has been established, the statute empowers the district court to subject the whole of the property in which the delinquent taxpayer has an interest to a forced sale. *The power is not limited to the sale of only the delinquent taxpayer's interest.* Thus, the statute contemplates that the district court may subject the interests on persons other than the taxpayer to an involuntary conversion during the course of enforcing the Government's lien on the delinquent taxpayer's interest in the same property. The owners other than the taxpayer, however, are entitled to just compensation from the proceeds of the sale for that 'taking.'

*United States v. Overman*, 424 F.2d 1142, 1146 (9th Cir. 1970) (citations omitted) (emphasis added).

#### 1.  Equitable Subrogation

Despite the government's right to foreclose, defendant Yu seeks application of the doctrine of equitable subrogation to reduce the government's entitled share of foreclosure proceeds. Defendant Yu argues that our court of appeals, in *Kenney v. United States*, 458 F.3d 1025 (9th Cir. 2006), has "recently clarified in a situation like this" that the Court must "reimburse Yu for all the amounts that she has paid over and above her 50% share of the costs of preserving the property" out of "Jones's 'share'" (Opp. 2). Yet the government correctly points out that this citation is entirely misplaced, as in *Kenney* the parties "[did] not dispute that

7

Kenney [was] entitled to equitable subrogation for some of the house sale proceeds." *Id.* at 1029. The issue considered by the court was — assuming subrogation — the order of distribution of sale proceeds between the government, the innocent spouse, and the subrogation amount to be paid to the spouse when he stood in the shoes of lenders. Defendant Yu ignores the legal standards for determining whether she actually should be entitled to equitable subrogation to begin with.

State law subrogation rights are recognized in determining tax lien priority rights. 26 U.S.C. 6323(i)(2); *see Fidelity Nat'l Title Ins. Co. v. United States*, 907 F.2d 868, 870 (9th Cir. 1990). "Equitable subrogation permits a person who pays off an existing encumbrance to assume the same priority position as the holder of that encumbrance." *Han v. United States*, 944 F.2d 526, 529 (9th Cir. 1991). Under California law, a party is only entitled to equitable subrogation where:

> (1) Payment [was] made by the subrogee to protect [her] own interest. (2) The subrogee [did not act] as a volunteer. (3) The debt paid [was] one for which the subrogee was not primarily liable. (4) The entire debt [was] paid. [and] (5) Subrogation must not work any injustice to the rights of others.

*Caito v. United Cal. Bank*, 20 Cal.3d 694, 704 (1978) (citations omitted).

Defendant Yu is not entitled to equitable subrogation. True, she has been making payments on the property since her ex-husband left at the end of 2002, and those payments were made to protect her own interests and she was not acting as a volunteer in making payments. But Ms. Yu fails to meet the last three requirements for the application of equitable subrogation. She was primarily liable for the debt on the property, the entire debt has not been paid, and subrogation would work an injustice as to the rights of the government to collect the proceeds of foreclosure on its valid lien.

### 2. Discretion to Avoid Foreclosure

Defendant Yu next argues that equitable considerations should preclude a grant of foreclosure. Under the principles set forth in *Rodgers*, 461 U.S. at 703–11, district courts have discretion to *not* order a forced sale authorized by Section 7403. *Rodgers* set forth four considerations that will be paramount when exercise of such discretion is warranted:

8

> 1  First, a court should consider the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes. . . .
>
> Second, a court should consider whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors. . . .
>
> Third, a court should consider the likely prejudice to the third party, both in personal dislocation costs and in . . . undercompensation [that may result from foreclosure sale].
>
> Fourth, a court should consider the relative character and value of the non-liable and liable interests held in the property: if, for example, in the case of real property, the third party has no present possessory interest or fee interest in the property, there may be little reason not to allow the sale; if, on the other hand, the third party not only has a possessory interest or fee interest, but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed.

*Id.* at 710–11. Instead of showing that discretion should be exercised here, these considerations in fact demonstrate that there is no reason to avoid a foreclosure sale on the basis of equity in this case.

None of the considerations that the Supreme Court held would be paramount when it is appropriate to exercise discretion to avoid a foreclosure sale are present here. A notice of federal tax lien has been attached to the subject property since 2004, so defendant Yu should have expected that the property would be subject to a forced sale. Also, defendant Yu's opposition brief conflates her request for equitable subrogation with analysis of the *Rodgers* factors; she argues that there is little point to a forced sale because the government's interest is greatly diminished (Opp. 13). Yet, having determined that defendant Yu is not entitled to equitable subrogation, factors one and four favor a forced sale. Although factor three does weigh against a forced sale, it does so no more than in any other case in which an innocent former spouse to a tax debtor would be prejudiced by sale of her home. It is unfortunate that application of the law must sometimes displace individuals like Ms. Yu, but that is the command of Section 7403, and Ms. Yu will not be without just compensation for the taking. *See id.* at 696–98.

9

Therefore, the government is entitled to a decree of foreclosure sale of the subject property under Section 7403. Neither equitable subrogation nor the exercise of discretion in equity precludes such a sale.

### C. MISSING INFORMATION NECESSITATES STAY OF DISTRIBUTION OF PROCEEDS AFTER FORECLOSURE SALE

Even though the government is entitled to summary judgment of its right to foreclose, subsequent to sale further process is needed before sale proceeds may be distributed. Certain missing information must be provided. Information is missing relative to the interests of the following defendants: PNC Mortgage, Unifund CCR Partners, and Bank of America.

As stated above, the only information in the record as to the *current amount* of PNC Mortgage's interest in the property is: (1) PNC Mortgage's statement in its answer that the amount is $165,736.35; and (2) defendant Yu's sworn statement in her declaration submitted in opposition to the instant motion that "[t]here is currently (as of September 12, 2010) principal owning on the current mortgage in the amount of $161,208.24." There is no documentation in the record to substantiate any amount currently owing. Moreover, even if the amount stated in Ms. Yu's declaration were taken as the more accurate amount, it was only accurate as of that date and we have no way of knowing if it has been further reduced since then.

Further problematic is the lack of any information concerning the interest of Unifund CCR Partners in the subject property. Again, in its answer to the complaint, Unifund stated that on April 3, 2006, a complaint was filed in the matter of *Unifund CCR Partners, a New York General Partnership v. Benjamin A. Jones*; that defendant Jones failed to file a response to the complaint and on September 18, 2006, judgment was entered against him in the amount of $19,302.28; and that an abstract of judgment was recorded in San Francisco County as document number 2006-I295946-00, on December 11, 2006. Unifund CCR Partners claims a lien against the subject property in that amount, plus interest, and defendant Yu disclaims such interest. The record is devoid of a copy of the referenced abstract of judgment.

It is also unclear whether defendant Bank of America, N.A. has any interest in the property. Bank of America has not responded to the complaint, though summons was served on July 23, 2010 (Dkt. No. 32). Default has not been entered against it. At oral argument, counsel

1 for defendant Yu raised the issue of whether the proof of service in the record adequately shows
2 that service was effected. True, the circumstances of service are not clearly set out by the proof
3 of service (*ibid.*). Yet government counsel assured the undersigned that service had been made
4 to Bank of America. The government should file further proof of service promptly.

5 Because the extent and priority of these interests are unclear, distribution of the sale
6 proceeds must await further order subsequent to the sale. Further procedure will be outlined
7 below.

8 Yet summary judgment for the government and the foreclosure sale need not await
9 determination of all defendants' interests in the subject property, including those who have not
10 asserted any such interest in response to the instant motion. It is enough that the government is
11 clearly entitled to foreclose on its tax lien in the amount of $109,333.22, and Ms. Yu is entitled
12 to the remainder of the proceeds from such sale, subject to her possible duties to other
13 defendants.[*] The Court is aware of no impediment to proceeding with the sale and then giving
14 the other defendants a last opportunity to assert any right to the proceeds. *See Kenney*, 458 F.3d
15 at 1028 (reviewing procedure whereby division of the proceeds between the parties was
16 determined by the court after sale of the property).

17 **D.    REQUEST FOR JUDICIAL NOTICE**

18 Apart from other documents and information provided by defendant Yu identified
19 above, she requests that this order take judicial notice of the following:

20 • The Case-Shiller Index of Seasonally Adjusted Home Price Values. This is the most widely used index of housing prices, published now by
21 Standard & Poors. It is publicly available at http://www.standardandpoors.com/home/en/us/.

22
23 • The fact that when residential real property is sold by the IRS in a cash-only foreclosure sale, it is reasonably likely that there will be a

---

25     [*] It must be noted that a stipulation between the government and defendant Jones
26 early on in the case set the government's interest in the property at "$168,149.71 as of February 24, 2010, plus interest" (Dkt. No. 6). The actual federal tax lien, however, is
27 only in the amount of $109,333.22 (Dkt. No. 17-1 Exh. 5). The government has not claimed in its moving papers to be owed the greater amount and this order does not find a
28 basis for holding that it is. The government's interest in the property is $109,333.22, the amount of the tax lien.

11

> "foreclosure discount" of some amount. By foreclosure discount we mean that the price realized will be less than would be realized in a conventional sale listed with an agent. We do not ask the Court to accept the certainty of such a discount with regard to a particular property, or any particular percentage discount; but merely the reasonable likelihood that, in determining the likely sale price if the property at issue is sold in a foreclosure sale, it will not realize its fair market value.
>
> • The entire Internal Revenue Manual is publicly available at http://www.irs.gov/irm/ . . . , and of the fact that the IRS itself recognizes that a discount of 20%-25% is a reasonable estimate of the foreclosure discount.

(Dkt. Nos. 27 and 29.) FRE 201 states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Moreover, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." *Ibid.*; *see also United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

Accordingly, this order takes judicial notice of the index and the manual identified above, but only for the purpose of establishing those documents' existence and contents, not for the purposes of assuming the truth of the matters asserted therein. The "foreclosure discount" statements are subject to reasonable dispute and as such judicial notice of them is inappropriate.

## CONCLUSION

For the foregoing reasons, the government's motion for summary judgment is **GRANTED** and trial is **VACATED**. The government has carried its burden to show that there are no genuine issues of material fact concerning its right to foreclose on the subject property. The government is entitled to a decree of its interest, in the amount of $109,333.22, in the real property of defendant Michelle Yu located at 72 Great Highway, Unit 3, San Francisco, California. The federal tax lien attached to the property shall be foreclosed, and the property shall be sold at a foreclosure sale.

The sale of the subject property shall be conducted in the following manner: (1) notice of sale shall be published in accordance with 28 U.S.C. 2002; (2) the Marshal Service or its representative shall have access to the real property for purposes of showing it for sale and to preserve it pending delivery to the ultimate purchaser; (3) bidders shall demonstrate an ability to

make a minimum deposit and, if successful, shall pay the remainder of the purchase price within a set period of time, and if they fail to pay the remainder of the purchase price, they shall be liable to the government pursuant to 28 U.S.C. 3203(g); and (4) the Marshal's commission shall be distributed from the sale proceeds in accordance with 28 U.S.C. 1921(c).

Further distribution of the sale proceeds shall await subsequent order, which shall determine the interests and priorities of the parties. To that end, the government shall file a status report when the foreclosure sale has occurred, including the net proceeds subject to distribution. That report shall be filed no later than **MARCH 4, 2011**, or within **TWO WEEKS** of the sale, if earlier.

At that time, *all parties* shall have no more than **FOURTEEN DAYS** of the filing of such report to notice a motion on the regular 35-day track for judgment that they are due some of the sale proceeds, and their priority relative to the other parties. If no parties file a motion by that time, judgment will be entered that sale proceeds shall be divided between the government and Ms. Yu, with $109,333.22 going to the government and the remainder going to Ms. Yu. Though it seems from the record that other defendants may have claims to the proceeds, they have not asserted those claims in response to the instant motion, so the proceeds will be divided as stated unless they take advantage of this further opportunity to do so.

**IT IS SO ORDERED.**

Dated: January 18, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE